**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:  ASBESTOS PRODUCTS  :        CIVIL ACTION NO. MDL 875

LIABILITY LITIGATION (NO.VI) :

_____

**This document relates to:**

_____

| | |
|---|---|
| In Re Asbestos Products Liability Litigation  (No.: VI), | MDL DOCKET: (MARDOC) |
| Certain Plaintiffs, v. Certain Defendants | Civil Action No.:2:02-md-875 GROUP 1, 5 CASES |

**PLAINTIFFS' COMBINED RESPONSE AND MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT BELCHER TOWING COMPANY'S
MOTION TO DISMISS**

COMES NOW, certain Plaintiffs,[1] by and through counsel, and hereby file this

Combined Response and Memorandum of Law in Opposition to Defendant, Belcher Towing

Company's ("Defendant") Rule 12(b) Motion to Dismiss for lack of personal jurisdiction

[Docket No. 2018].  Defendant's Motion should be denied for the reasons stated herein.

_____

[1]  Plaintiffs are identified in attached Exhibit "A".

## INTRODUCTION

Defendant's Motion for Dismissal has already been heard and denied (in certain cases), comes several years too late or would not be in the "interest of justice". Judge Lambros heard the same arguments for dismissal for lack of personal jurisdiction in 1989 and rejected them. These arguments have grown only more stale and unavailing since that time. Although Defendants sought to have some of these very same MARDOC cases dismissed, Judge Lambros determined that transfer would serve justice better. Instead of allowing the cases to be transferred, however, Shipowner Defendants waived their personal jurisdiction defenses and consented to the prosecution of the cases in the Northern District of Ohio.

Since 1989, and the filings of many additional suits, only one Shipowner Defendant filed a Motion to Dismiss for lack of personal jurisdiction in the Northern District of Ohio in these cases. This occurred in 1999 upon remand from MDL 875. Once the court considering the motion indicated that transfer, not dismissal was the likely result, the motion was withdrawn. Several additional years have passed and Defendant has finally filed Motions to Dismiss based on personal jurisdiction in 2012. Defendant has not diligently pursued its personal jurisdiction defense and this Court should deem the defense forfeit. In the event this Court considers Defendant's Motion, the "interest of justice", as Judge Lambros recognized, supports transfer of the cases, not dismissal. Defendant's Motion to Dismiss should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Inherent Jurisdictional Complexity of Maritime Asbestos Cases.

As this Court has doubtless come to realize, even in the highly specialized world of asbestos litigation, cases of merchant marines with asbestos-related injuries are unique. Unlike traditional asbestos cases in which exposure to asbestos occurs during work hours at a stationary

facility in a readily ascertainable location, the asbestos exposures of merchant mariners took place continually on mobile vessels. These floating job sites traveled along shipping routes throughout the world and may have had only momentary contact with a particular port in any state. In addition, and unlike most asbestos cases in which an individual experienced asbestos exposure at a handful of job sites in one or two states, merchant mariners served aboard dozens of vessels which traveled various routes and which were owned by a number of entities with a multiplicity of contacts in many states.

As an example, Plaintiffs submit the work history of Plaintiff, Mr. Hendrik J. Spanhoff. As a review of Mr. Spanhoff's vessel service history and Coast Guard records show, during his merchant marine career he worked for twenty-two (22) different shipowners[2] and sailed out of ports in the following states: Alabama, Alaska, California, Florida, Indiana, Louisiana, Maine, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Oregon, Texas, Virginia, Washington and Wisconsin. *See* Omnibus Exhibit "B" Collective Vessel Service History and Coast Guard Records of H. Spanhoff. Plaintiffs in typical asbestos cases do not have such a wide-ranging work history with contacts across more than a dozen different states. Furthermore, some of the shipowners for whom Mr. Spanhoff worked have principal places of business in various states such as Ohio (Interlake Steamship Co.), Illinois (Amoco Oil Co.), Texas (Exxon Company USA and Exxon Shipping Co. (SeaRiver), Mobil Shipping), Pennsylvania (Keystone Shipping Co. and Keystone Mgmt. Services Co.), California (Chevron

---

[2]   The shipowners include:  American Foreign Shipping Co., Amoco Oil Co., Chesapeake Shipping Co., Inc., Chevron Shipping Co., Exxon Company USA, Exxon Shipping Co., Interlake Steamship Company, Keystone Mgmt. Services Co., Keystone Shipping Company, Kinsman Lines Inc., Marine Carriers Corp., Marin Contracting & Towing, Marine Transport Management Inc., Mobil Oil Corporation, Mormac Marine Transport, Inc., Ocean Ships Inc., Sabine Transportation Co., Seabulk Tankers Inc., Texaco Inc., Transoceanic Cable Ship Company, Inc., Trinidad Corporation and West Coast Shipping Company.   *See* Omnibus Exhibit "B", Collective Vessel Service History and Coast Guard Records of H. Spanhoff.

Shipping Co.), Florida (Marine Transport Mgmt. Inc.), New Jersey (Transoceanic Cable Ship Co., Inc.), and Missouri (Trinidad Corporation).

Counsel for Plaintiffs has reviewed data for the MARDOC cases as a whole and the review shows that Mr. Spanhoff's career is typical of Plaintiffs. Based on the review, counsel has determined that the MARDOC Plaintiffs average over 30 different voyages in a career and average slightly more than 13 Defendants per case. There are over seven hundred (700) shipowner Defendants in approximately three thousand (3,000) MARDOC cases.

There is a long history of merchant marine commerce taking place on the Great Lakes including Lake Erie, on whose banks sits the city of Cleveland in the Northern District of Ohio.[3] *See, e.g.,* Warren J. Marwedel and Shari L. Friedman, *Admiralty Jurisdiction and the Great Lakes*, 24 U. Tol. L. Rev. 345, 345 (1993)(the twentieth century saw "thousand-foot leviathans traveling between ports on the Great Lakes in the United States and Canada" and also a "'salty' trade in which large ocean-going vessels brought in general cargo, steel and later containers"); Omnibus Exhibit "C", excerpt, Raymond A. Bawal, Jr., *Twilight of the Great Lakes Steamer* (Inland Expressions 2009). Many shipowner Defendants have or had ties to Ohio including Alcoa Steamship Co., American Export Lines, American Mail Lines, American President Lines, American Trading Transportation Company, Canterbury Shipping Corporation, Cleveland Tankers, Inc., Charles Kurz & Co., Inc., Chiquita Brands International, Delta Steamship, Eastern Gas & Fuel Associates, Farrell Lines, Inc., Keystone Shipping Company, United Fruit Company, Waterman Steamship Corporation and Weyerhaeuser Company.[4]

---

[3] Although their argument centers on Ohio, certain Defendants have mentioned, in passing, that they contest jurisdiction in Michigan and the U.S. Virgin Islands. Plaintiffs submit that Defendants have not carried their burden with respect to lack of personal jurisdiction in Michigan and the U.S. Virgin Islands. Plaintiffs also submit that Michigan has ties to merchant marine work on the Great Lakes and the U.S. Virgin Islands also has merchant marine trade.

[4] It should be noted that under the Jones Act, one of the prongs of asserting personal jurisdiction is whether the defendant has national, not state, contacts. *See Gazis v. John S. Latsis, Inc.,* 729 F. Supp. 979, 991 (S.D.N.Y.

Indeed, there is still a Great Lakes Merchant Marine Academy as part of Northwestern Michigan College in Traverse City, Michigan. *See* https://www.nmc.edu/maritime/index.html (last visited on February 15, 2013). Many MARDOC Plaintiffs with cases pending in MDL 875 served aboard vessels which sailed on the Great Lakes, including Lake Erie. A portion of Group 7 in the MDL MARDOC consists of "Lakes" Plaintiffs. *See* Case Management and Scheduling Order for MARDOC Group 1 filed 11/23/11 at p. 1. Given this backdrop, it is understandable that counsel for the various MARDOC Plaintiffs filed cases in a central jurisdiction with ties to the merchant marine industry.

Also, unlike general asbestos cases, these cases are governed by the Jones Act and general maritime law which is uniform. The United State Supreme Court has recognized "the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 402 (90 S. Ct. 1772 (1970)(quoting *The Lottawanna*, 88 U.S. 558, 21 Wall. 558, 575 (1875)). The Court in *Moragne* also remarked that "the Jones Act was intended to achieve 'uniformity in the exercise of admiralty jurisdiction' by giving seamen a federal right to recover from their employers for negligence regardless of the location of the injury or death." *Id.* at 401 (quoting *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 155 (1964)).

In *Gibbs v. Carnival Cruise Lines*, the Third Circuit stated that in cases where federal admiralty law applies, the district court should not apply the substantive law of the state in which it sits or any other state. 314 F.3d 125, 132-33 (3d Cir. 2002); *see also East River Steamship v. Transamerica Delaval Inc.*, 476 U.S. 858, 864-65, 106 S. Ct. 2295 (1986)(general maritime law

---

1990)("The due process requirement of the fifth amendment requires only nationwide contacts for causes of action brought under federal statutes such as the Jones Act.")(citing *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947, 950 (1st Cir. 1984)).

is drawn "from state and federal sources" and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules"). When the governing law is uniform regardless of the state, the motivation for forum shopping is obviated. When Plaintiffs filed their cases in the Northern District of Ohio it was not with the intent to have the substantive law of Ohio apply to their cases.

**B. Prior Personal Jurisdictional Rulings and Resulting Defendant Conduct.**

**1. The October 31st, 1989 Conference.**

By the autumn of 1989, numerous shipowner Defendants had filed motions to dismiss for lack of personal jurisdiction in hundreds of cases pending in the United States District Court for the Northern District of Ohio and Judge Lambros was prepared to rule. On October 31st, Judge Lambros voiced his ruling on the personal jurisdiction issue in a conference concerning these cases during which counsel for many shipowner Defendants was present, including Thomas Murphy of Thompson Hine. Omnibus Exhibit "D", Transcript 10/31/89 at p. 86-88. Judge Lambros listed dozens of Defendants who had moved for dismissal and over which the court determined that personal jurisdiction was lacking. *Id*. at p. 58-60. The court did not, however, grant Defendants' Motions to Dismiss. *Id*. at 86. Instead, the court decided that "the sound judgment and decision with respect to those cases against those defendants is to order those cases transferred." *Id*. at 57. Later, the Court reiterated that the Motions to Dismiss "had not been granted" and that the court would transfer certain cases. *Id*. at 86.

Judge Lambros reasoned that since Plaintiff's choice of forum is normally given great deference, Plaintiffs should suggest initially appropriate forums to which the cases should be transferred. *Id*. After Plaintiffs' selection, Defendants were allowed a time to state whether they

opposed the proposed forum and, in that event, Defendants would be required to provide the identity of each state in with Defendant was subject to personal jurisdiction. *Id*. at 61.

In the midst of the hearing, Mr. Murphy of Thompson Hine, representing shipowner Defendants, immediately requested time to consult with his clients. *Id*. at 88-89. Mr. Murphy opined that it was "conceivable … in view of the fact that such motions to dismiss have been denied that some of those defendants who filed motions will not care to be transferred and they [may] wish to stay here…." *Id*. at 90. Judge Lambros was amenable to allowing defense counsel time to consult with their clients to determine whether to accept the transfer or waive personal jurisdiction. *Id*. At the conclusion of the hearing, Judge Lambros stated that "[w]e dealt with the jurisdictional matters today." *Id*. at 103.

## 2. The November 21st Conference.

During a later conference, Judge Lambros inquired of defendants' counsel whether a requirement that a January 5th "answer date" would be sufficient in that "if the position [of Defendants] is that they are not leaving, they have to have their answers in on those dates?" Omnibus Exhibit "T", Transcript 11/21/89 at p. 76:14-77:1. To this, Mr. Murphy of Thompson Hine responded, "I see no problem with that, your Honor. Now that we have the information, we know what we have to do, that's no problem." *Id*. at 77:7-9. Later, the Court made clear that if a defendant elected to file an answer, it was agreeing to remain in the jurisdiction and not to be transferred. Specifically, the Court stated that "But January 5th the answers have to be filed, and then we transfer then if those specific defendants don't answer and thus waive by the answer date, then the cases get transferred out." *Id*. at 79:12-15. To clarify, Special Master Martyn inquired, "Just for my understanding, so they [defendants] will answer if they want to stay." *Id*. at 80:7-8. Judge Lambros responded, "That's right." *Id*. at 80:9.

### 3. The November 22nd, 1989 Order.

Following another conference on November 21st, 1989, Judge Lambros entered MARDOC Order No. 40 on November 22nd.  Omnibus Exhibit "E", Order 11/22/89.  Pursuant to this Order, Plaintiffs were required to provide a choice of forum for those cases to be transferred "no later than December 10, 1990 [sic]."  *Id*.  The court noted that "[a] discussion of that determination of transfer is of record in the transcripts of the October 31 and November 21, 1989 MARDOC conferences.  The records of those proceedings are incorporated into this order."  *Id*.  The court stated that a transfer order would issue December 15, 1989 which would take effect January 7, 1990.  *Id*.  The court ordered that those Defendants who "wish to remain in this jurisdiction need only file answers to the complaints in accordance with the deadlines established below."  *Id*.

### 4. The December 29th, 1989 Order and Aftermath.

Although MARDOC Order No. 40 stated December 15th, the actual transfer order, MARDOC Order No. 41, was entered by Judge Lambros on December 29th, 1989.  Omnibus Exhibit "F", 12/29/89 Order.  In this Order, the court stated that the cases subject to the transfer ruling "are transferred to jurisdictions which plaintiffs represent have sufficient contact to sustain the choice of that in personam jurisdictional forum."  *Id*.  Shipowner Defendants subject to the transfer Order were listed in Exhibit A.  *See id*. at Exhibit A.  The jurisdictions to which the cases were to be transferred were included with the Order at Exhibit B.  *Id*. at Exhibit B.

As this Court might infer, given the current Motions, no cases were transferred to other jurisdictions ultimately.  Instead, as Thompson Hine's Mr. Murphy foresaw, and as the attached docket sheets reveal, a majority of shipowner Defendants, including many (if not a majority) of the current movants, elected to waive their personal jurisdiction defense, answer Plaintiffs'

complaints and remain in the Northern District of Ohio.  Omnibus Exhibit "G", excerpt Docket entries of the Northern District of Ohio.

In 1990, Plaintiffs then sought for the MARDOC matters to be transferred in toto to various jurisdictions around the country.  The shipowner Defendants opposed such a transfer citing the inconvenience of prosecuting these cases in multiple jurisdictions simultaneously.  *See* Omnibus Exhibit "G-2," Brief of Defendants Represented by Thompson, Hine, and Flory in Opposition to Plaintiffs' Motion to Transfer in Toto at 2-3.  Critically, the shipowner Defendants explicitly acknowledged that they waived personal jurisdiction:

> Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid the expenses of litigation these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in [the Northern District of Ohio].

*Id.*

Later in the same Brief, Defendants again stated that they had "elected to waive" personal jurisdiction "and submit themselves to the Court's jurisdiction to take advantage of this Court's experience in the handling of mass tort litigation, the consolidated handling of cases available in this Court, and to avoid the inconvenience of litigating these cases simultaneously in 13 scattered jurisdictions."  *Id*. at 9-10.  Thus, in March of 1990, Defendants admitted to waiving personal jurisdiction expressly and, apparently successfully opposed Plaintiffs' attempts to have these cases transferred to other jurisdictions.

Indeed, many shipowner Defendants were involved in the trial of several Plaintiffs' cases which took place in the Northern District of Ohio in 1990 and 1991.  In their Brief filed with the Judicial Panel of Multidistrict Litigation in March of 1991, which was then assessing whether to include the MARDOC cases in a potential asbestos MDL, two hundred and fifty-two (252)

shipowner Defendants argued that the 1,450 cases should **remain in the Northern District of Ohio**[5] because, among other reasons, the "seaman's asbestos cases pending in the Northern District of Ohio are proceeding pursuant to a Case Management Plan adopted in 1987." *See* Omnibus Exhibit "H-2", JPML Brief of shipowner Defendants at p. 7. The shipowners noted that 4 cases "were tried in late 1990, and another 336 cases have been placed in a priority status with trials in the first clusters of cases scheduled to commence after April 29, 1991." *Id*. at 7-8. The shipowner Defendants concluded the section by stating as follows: "Discovery is proceeding in these prioritized cases, and a transfer would delay, not advance, a final resolution. Transfer would not benefit the parties or the courts in these matters." *Id*. at 8. With respect to transfer to an MDL, "Defendant-shipowners in seamen's maritime asbestos cases are believed to be virtually unanimous in their opposition to transfer and consolidation of such cases." *Id*.

### 5. MDL 875 and Later MARDOC Cases.

The Judicial Panel on Multidistrict Litigation established MDL 875 to consolidate federal asbestos personal injury cases by order entered July 29, 1991. *In re Asbestos Products Liab. Litig.* (No. VI), 771 F.Supp. 415, 417-18 (Jud.Pan.Mult.Lit., 1991). Over 26,000 asbestos cases were transferred to MDL 875 immediately. *Id*. at 416-17. The MARDOC cases were transferred to MDL 875 as well including the cases of approximately two hundred and thirteen (213) Plaintiffs that counsel has identified who had cases on file prior to Judge's Lambros's determination of the personal jurisdiction issue. Omnibus Exhibit "H", List of Plaintiffs. Additional MARDOC Plaintiffs' cases continued to be transferred to MDL 875, thus reaching the same destination they would have had they been filed in a federal district court other than the Northern District of Ohio. These transfers continued for years until very recently when the

---

[5] In addition, shipowner Defendants opposed transfer to any MDL of 44 maritime asbestos cases pending, apparently, in the Eastern District of Michigan.

Judicial Panel, at Judge Robreno's urging, began to halt transfers to MDL 875 for asbestos personal injury cases filed in many districts.

On May 2, 1996, Judge Weiner dismissed administratively scores of MARDOC cases. Omnibus Exhibit "I", Order 5/2/96. Following the administrative dismissals, Chief Judge White of the Northern District of Ohio entered an order which "relieved" Defendants in asbestos MARDOC cases filed in the Northern District of Ohio "from the duty of filing their answers until further notification." Omnibus Exhibit "J", White Order 5/13/96. On March 17, 1997, Judge Weiner entered another Order that expanded his order of May 2, 1996 and provided that "[a]t the time of reinstatement of any case, answers are to be filed and the action will then proceed according to this Court's orders." Omnibus Exhibit "K", Order 3/17/97. Nothing in the orders entered by Judge Weiner or the order of Judge White precluded Defendants from filing motions to dismiss for lack of personal jurisdiction.

Not all MARDOC cases remained stayed until the most recent reinstatement orders, however. Many cases were reinstated and remanded to the Northern District of Ohio for prosecution there. Among those were the cases concerning Plaintiffs Walter L. Pritchett, John L. White, Charles J. Willie, Rolf L. Lindstrom, Charles A. Welch, James E. Jackson and William Stark. There were over sixty (60) shipowner defendants named in those cases including many current shipowner Defendants. *See* Omnibus Exhibit "L", Spreadsheet of Defendants. Of the sixty, only one shipowner Defendant attempted to have claims against it dismissed for lack of personal jurisdiction in the Northern District of Ohio. This occurred in the *William Stark v. Alaska Steamship Co.* case ("Stark case").

In April of 1998, Judge Weiner reinstated, consolidated and transferred the Stark case from MDL 875 to the Northern District of Ohio. *See* Omnibus Exhibit "M", Order. After the

case was transferred, Defendant, Alaska Steamship moved for dismissal for lack of personal jurisdiction. *See* Omnibus Exhibit "N", Docket entries for Stark. Plaintiff filed a response and, after it became apparent that the court, similar to Judge Lambros before it, favored transfer of the case instead of dismissal, Defendant withdrew its Motion. *Id*.; *see also*, Omnibus Exhibit "O" Notice of Withdrawal. Alaska Steamship, as many other shipowner Defendants had done previously, elected to waive its personal jurisdiction argument and have the case litigated in the Northern District of Ohio. Apparently, shipowner Defendants would much rather litigate these maritime cases in the Northern District of Ohio if their other option is transfer to some other venue. Upon current knowledge, information and belief, the Motion filed by Alaska Steamship in 1999 was the last Motion to Dismiss for lack of personal jurisdiction filed by a shipowner Defendant in these MARDOC cases until the present motions were filed in 2012.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. DEFENDANTS HAVE BOTH WAIVED AND FORFEITED THEIR PERSONAL JURISDICTION ARGUMENTS.

For the 213 Plaintiffs who are a part of the MARDOC docket, the issue of whether a court should dismiss or transfer their cases for lack of personal jurisdiction over shipowner Defendants was decided by Judge Lambros in 1989. "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). "The law of the case doctrine was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Continental Casualty Co. v. Diversified Indus.*, 884 F. Supp. 937, 948 (E.D. Pa. 1995). In *Resolution Trust Corp. v. Gibson*, the court stated that "[t]he law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the

same case.' The purpose of the doctrine is to promote finality and efficiency. The doctrine applies where a transferee court is asked to reconsider a decision of a transferor court regarding the transferee court's jurisdiction." Omnibus Exhibit "P", 1993 U.S. Dist. LEXIS 11076 at *5 (E.D. Pa. August 12th, 1993)(internal citations omitted). Of course, Judge Lambros's determination that transfer was appropriate was not adhered to by Defendants because they elected to waive personal jurisdiction and remain in the Northern District of Ohio and litigate the cases there.

In the event, however, that this Court determined that Defendant has not waived its personal jurisdiction defense, the law of the case doctrine precludes dismissal as Judge Lambros's determination that transfer, not dismissal, was appropriate controls. There has been no demonstration that a Motion for Reconsideration of Judge Lambros's denial of Defendants' Motions to Dismiss was filed, much less granted. There has been no evidence that a writ of mandamus was ever sought by Defendants in the Sixth Circuit seeking to review and reverse Judge Lambros's denial of Defendants' Motions to Dismiss. Finally, although certain Defendants apparently sought leave to file an interlocutory appeal, there has been no showing that leave was ever granted or that Judge Lambros's denial of the motions to dismiss was ever formally challenged by other means. Instead, the only evidence is that Defendants sought to remain in the Northern District of Ohio to continue preparing cases for trial in that district. Therefore, Judge Lambros's decision remains the law of the case and is controlling here.

A. **Defendants Have Waived Their Right to Assert Lack of Personal Jurisdiction in Certain Cases.**

The defense of personal jurisdiction may be deemed waived or forfeited through conduct, or lack thereof, in two separate circumstances. First, a defendant may waive personal jurisdiction by its failure to comply with Rule 12 of the Federal Rules of Civil Procedure which

deems the defense waived if not made by motion or included in a responsive pleading. *See* Fed. R. Civ. P. 12. Second, a defendant may waive personal jurisdiction by participating in the litigation and thereby taking advantage of the forum. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982)("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.").

The Sixth Circuit has held that Rule 12(h) of the Federal Rules of Civil Procedure "sets only the outer limits of waiver, it does not preclude waiver by implication." *Creech v. Roberts*, 908 F.2d 75, 84 (6th Cir. 1990)(quoting *Marquest Medical Prods., Inc. v. Emde Corp.*, 496 F. Supp. 1242, 1245 n. 1 (D. Colo. 1980)). Consistent with the Sixth Circuit, courts throughout the country have held that even when a defendant asserts a lack of personal jurisdiction defense in its answer, waiver can occur through its attempt to actively litigate the case. *See, e.g.*, *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 623 F. Supp. 153 (E.D. Pa. 1985)("Lack of personal jurisdiction is a privileged defense that can be waived 'by failure to assert it reasonably, by formal submission in a cause, or by submission through conduct.'")(quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (U.S. 1939)); *Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477 (S.D.N.Y. 1985)("by asserting the defense of lack of [personal] jurisdiction in their answers" defendants "do not preserve the defense in perpetuity."). According to the Sixth Circuit, the threshold issue is whether a defendant's conduct "give[s] a plaintiff reasonable expectation that a defendant will defend the suit on the merits" or "cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.…" *State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc*, 2012 U.S. App. LEXIS 17364, 7-8 (6th Cir. Ohio 2012).

The "waiver-by-conduct" rule holds that even if a party complied with the procedural requirements of Rules 12(g) and (h), a party may consent to personal jurisdiction if he or she

"actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Tex. Eastern Transmission Corp.*, 15 F.3d 1230, 1236 (3d Cir. 1994). The purpose behind the rule is to foster compliance with the spirit of Rule 12(h) and to protect judicial economy by requiring parties to expeditiously bring preliminary defenses to the court's attention. *See Wyrough & Loser, Inc. v. Pelmor Labs, Inc.*, 376 F.2d 543, 547 (3d Cir. 1967)).

Here, as previously discussed, shipowner Defendants, including many of the current movants, elected to waive their personal jurisdiction defense, answer Plaintiffs' complaints and remain in the Northern District of Ohio in 1989 and 1990. Defendants, in response to MARDOC Order No. 40, filed answers indicating their "wish to remain in this jurisdiction". Omnibus Exhibit "E", 11/22/89 Order. Defendants explicitly acknowledged this waiver in subsequent filings. *See* Omnibus Exhibit "G-2," at 2-3. Regardless, even those Defendants who neglected to file answers waived personal jurisdiction because either (1) they didn't raise the defense in an answer or by Motion or (2) none of the non-answering Defendants insisted that the transfers ordered by Judge Lambros occur. Thus, Defendants' continued presence in the forum without transfer is further evidence of waiver of the personal jurisdiction defense.

### B. Defendants Have Forfeited Their Right to Assert Lack of Personal Jurisdiction.

Defendant has also forfeited its right to raise the personal jurisdiction defense. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770 (1993)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019 (1938)); *see also Swaim v. Moltan Co*., 73 F.3d 711, 718 n. 4 (7th Cir. 1996)(personal jurisdiction "forfeited" if not timely asserted).

The MARDOC cases have been on file for varying periods of time. Certain cases have been on file since the late 1980s. Others were filed throughout the 1990s and some were even filed in the twenty-first century. Regardless of the varying lengths of time cases have been on file, one thing is plain—Defendants did not pursue, litigate or even file any Motions to Dismiss asserting that they were not subject to personal jurisdiction in the Northern District of Ohio at the MDL level until the filing of the present motions in late 2012. Following Judge Lambros's decisions concerning personal jurisdiction in 1989, the only Defendant that raised the issue was Alaska Steamship in one case, Stark, in April of 1999 when that case had been remanded to the Northern District of Ohio. *See* Omnibus Exhibit "N", Stark Docket sheet. As reported earlier, faced with the prospect of transfer instead of dismissal, Alaska Steamship withdrew its motion. Omnibus Exhibit "O", Stark Motion Withdrawal.

Neither of the Orders entered by Judge Weiner in 1996 and 1997 nor the 1996 Order of Judge White in the Northern District of Ohio precluded Defendants from filing Motions to Dismiss based on a lack of personal jurisdiction. Defendants did not file Motions to Dismiss when any case was filed in the Northern District of Ohio and Defendants did not file Motions to Dismiss when the cases were inevitably transferred to MDL 875. In *Hamilton v. Atlas Turner, Inc.,* the Second Circuit recognized that "when the prospect of an MDL transfer arose, [defendant] could have objected on jurisdictional grounds to including this case, or at least sought to defer its inclusion in the transfer until the jurisdictional issue was resolved." 197 F.3d 58, 61 (2d Cir. 1999). The court recounted chances the defendant let pass without raising the personal jurisdiction defense and concluded ultimately that the defendant had failed to move "to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer. These circumstances establish a forfeiture." *Id*. at 62.

These cases have been on file for much longer than four years. Although they have yet to be remanded or set for trial, the length of time that has passed since their filing with no attempt by Defendants to even file a motion asserting a lack of personal jurisdiction in many cases spans over a decade. Defendants' lengthy silence on the personal jurisdiction issue should constitute a forfeiture of that defense.

## II.     TRANSFER RATHER THAN DISMISSAL WOULD BE IN THE INTEREST OF JUSTICE IN THESE CASES

Should this Court determine that Defendants have not waived or forfeited their personal jurisdiction defenses, the "interest of justice" weighs in favor of the transfer of these cases, not their dismissal. It is well-settled that even where a court lacks personal jurisdiction over a defendant, it may transfer the case to a district where personal jurisdiction may be exercised in the "interest of justice." *See* 28 U.S.C. §1406(a),[6] *see also* 28 U.S.C. § 1631.[7] As early as 1962, the United States Supreme Court, in *Goldlawr, Inc. v. Heiman*, held that even though a plaintiff had filed suit in the wrong district and the statue of limitations had since run, the interest of justice required that the district court transfer the suit to the proper district rather than dismiss pursuant to § 1406(a) and reasoned as follows:

---

[6] 28 U.S.C. § 1406, entitled "Cure or Waiver of Defects" provides in relevant part that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, **or if it be in the interest of justice, transfer such case** to any district or division in which it could have been brought." *See* 28 U.S.C. §1406(a) (emphasis added).

[7] Entitled "Transfer to cure want of jurisdiction", 28 U.S.C. § 1631 provides in relevant part:

> Whenever a civil action is filed in a court…and that **court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed,** and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. §1631 (emphasis added).

The problem which gave rise to the enactment of the section was that of **avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn**.

***

**The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to the venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.** The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.

396 U.S. 463, 466-67, 82 S. Ct. 913 (1962) (emphasis added).

In holding that § 1406(a) warranted transfer of the plaintiff's action, the Supreme Court acknowledged that dismissal would have resulted in the plaintiff losing a substantial portion of his case due to the running of the statute of limitations. The Court noted that § 1406(a) was enacted to avoid "precisely this sort of injustice", holding that the "interest of justice" supported transfer so that a plaintiff would not be penalized by "time-consuming and justice-defeating technicalities". *Id*. at 466-467.

Following the Supreme Court's liberal construction of §1406(a), the Third Circuit Court of Appeals confirmed that §1406(a) should be interpreted "broadly" so that a plaintiff "because of jurisdictional problems does not lose its day in court by reason of the running of the statute of limitations in another forum." *Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007) (internal citations omitted). The Third Circuit has also interpreted 28 U.S.C. § 1631 as authorizing transfer of cases when the court lacks personal jurisdiction over a defendant. *See Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 284 (3d Cir. 1982)(vacating dismissal and stating that on remand district court may, upon motion by plaintiffs, consider transfer of case for lack of personal jurisdiction under §§ 1406 and 1631); *D'Jamoos v. Pilatus Aircraft LTD*, 566 F.3d 94, 110-11

(3d Cir. 2009)(recognizing that § 1631 permits transfer of "all or only part of an action" for lack of personal jurisdiction).

Many circuit courts have similarly interpreted §§ 1406 and 1631 as authorizing transfer for lack of personal jurisdiction over a defendant.   *See*, *e.g.*, *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967)("On the other hand, § 1406 operates when there exists an obstacle— either incorrect venue, absence of personal jurisdiction, or both—to a prompt adjudication on the merits in the forum where originally brought."); *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988)("As we have said, § 1406(a) has been interpreted to authorize broad remedial relief where there are impediments to an adjudication on the merits, and has not been limited to instances where the only impediment is lack of venue. We decide to align ourselves with those jurisdictions giving § 1406(a) a broad construction[.]"); *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985)(§ 1406(a) may be used when suit if filed in a district in which venue or personal jurisdiction is improper); *Sinclair v. Kleindienst*, 229 U.S. App. D.C. 13, 711 F.2d 291, 294 (D.C. Cir. 1983)(§ 1406(a) transfer appropriate to remove obstacles presented by "lack of personal jurisdiction"); *Taylor v. Love*, 415 F.2d 1118, 1120 (6th Cir. 1969), *cert. denied*, 397 U.S. 1023, 25 L. Ed. 2d 533, 90 S. Ct. 1257 (1970) (affirming District Court's ruling that it was in "the interest of justice" to effect the transfer for lack of personal jurisdiction pursuant to § 1406(a)); *Ross v. Colorado Outward Bound School, Inc.,* 822 F.2d 1524, 1527 (10th Cir. 1987)(holding that action in which transferor district court lacked personal jurisdiction should have been transferred under § 1631).

The determination of the issue of transfer under § 1406(a), "lies within the sound discretion of the district court."   *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)(citation omitted); *see also Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("Under either

section [1406(a) or 1631] the district court has broad discretion to grant or deny a motion to transfer the case.").  The relevant inquiry for a district court evaluating a potential transfer under either §§ 1406 or 1631 is whether the transfer would be in the "interest of justice."  28 U.S.C. §§ 1406, 1631.

When determining whether the "interest of justice" warrants transfer, courts have considered various equitable factors, including whether failure to transfer would prejudice the litigants.  In *Corke v. Sameiet M.S. Song of Norway*, the Second Circuit reasoned as follows: "The question then becomes whether transfer [for lack of personal jurisdiction] should be ordered.  The answer depends on whether transfer of this case is in the interest of justice. In our view refusal to transfer would severely prejudice appellant (plaintiff), whereas transfer would work no hardship on appellees." 572 F.2d 77, 80 (2d Cir. 1978).  The Second Circuit concluded that transfer was warranted and remanded the case with those instructions.  *Id*. at 81.

Other courts weighing transfer have reached similar conclusions.  *See* Omnibus Exhibit "Q", *Donohoe v. J-Way Leasing & Marine, LLC*, 2005 U.S. Dist. LEXIS 29122 at *4-5 (E.D. Mich. 2005)("The Court agrees with [Jones Act] Plaintiff that dismissal and re-commencement of this action would inconvenience Plaintiff and Defendant, and would work contrary to the interests of judicial economy.  Thus transferring the case [pursuant to § 1406(a)] is in the interest of justice."); Omnibus Exhibit "R", *Hatfield v. Asphalt Int'l, Inc.*, 2004 U.S. Dist. LEXIS 2036 *14-16 (S.D.N.Y. 2004)(comparing the relative burdens that transfer and dismissal would impose on the parties, noting that while the defendants would not be "prejudiced" by the transfer of this case, dismissal of the case would force the plaintiff to "expend significant time and money filing a new action in a new forum.").  "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and

justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)(quoting *Goldlawr, Inc.*, 369 U.S. at 467).

In these cases, transfer is in the "interest of justice", while dismissal would result in manifest injustice. Dismissal of these cases would not only inconvenience Plaintiffs, dismissal would "severely prejudice" Plaintiffs, perhaps irrevocably, as their asbestos-related injuries arose several years ago and the statute of limitations may prevent them from pursuing them further. Transfer would not prejudice Defendants. Although these cases were filed in the Northern District of Ohio, all federal asbestos cases were transferred to MDL 875 for pre-trial proceedings. Thus, Defendants are in the exact position they would have been in had these cases been filed in any other district. In actuality, the parties have all benefitted from the singular filings because it has allowed all claims associated with a single Plaintiff to be prosecuted, investigated, and defended against in a single action with the same counsel involved. Many Defendants acknowledged these very benefits in their filings which opposed transfer of these cases in March of 1990. Had the cases been filed in multiple jurisdictions initially, Defendants may have been forced to engage different counsel to defend claims against it by a single Plaintiff in multiple states.

Of course this inefficiency is more unnecessary because, as this Court is well aware, Plaintiffs have made claims against Defendants pursuant to the Jones Act and general maritime law. These claims are uniform and not dependent on state law. Thus, Defendants may have had to engage various counsel in multiple states even though the law governing the dispute was uniform. The uniformity of law also demonstrates that Plaintiffs have not and did not engage in forum-shopping in the hope that they might import a more favorable state's substantive law to their cases.

As recounted earlier, there is no singular "perfect" jurisdiction within which these cases may be prosecuted. There are too many locations of exposure aboard too many Defendants' vessels over Plaintiffs' extensive years of service. There are also too many states that can assert jurisdiction over only one or a handful of Defendants, but not several others. The Northern District of Ohio borders Lake Erie. The Great Lakes have substantial ties to merchant marine service including many Plaintiffs in this litigation. Given Defendants' conduct following Judge Lambros's ruling, Plaintiffs could reasonably conclude that personal jurisdiction would not be an issue as the shipowner Defendants had elected to waive it uniformly. Even when cases were remanded from MDL 875 during the 1990s, of the sixty shipowner Defendants involved in those cases only one bothered to raise personal jurisdiction and then, following suit with Defendants' previous conduct, waived the defense. In short, the conduct of Defendants demonstrates that they were and are satisfied with prosecuting these cases in one jurisdiction with one group of experienced counsel that hails from the area and maintain confidence that citizens residing in the Northern District of Ohio will give them a fair hearing in the event of trial. Such a conclusion is supported by the statements of various Defendants in Briefs opposing transfer of these cases to other jurisdictions in March of 1990 and transfer of these cases to an MDL in March of 1991. Upon review of the surrounding circumstances, the reason for Plaintiffs' continual filing of cases in the Northern District of Ohio becomes plain; both Plaintiffs and Defendants were content to litigate these claims in individual cases in a single jurisdiction. The "interest of justice" supports the transfer of Plaintiffs' cases, not their dismissal.

## A. The Mechanics of Transfer.

While Plaintiffs have demonstrated that transfer of these cases is proper under either § 1406(a) or § 1631, Defendant further contends that because this Court is an MDL transferee

court, it does not have authority to transfer this action to another district. In support of this proposition, Defendant cites *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) and 28 U.S.C. § 1407(a).[8] Contrary to Defendant's assertion, the Court in *Lexecon* did not consider whether an MDL court could transfer MDL actions under either § 1406(a) or § 1631. Instead, the Court interpreted § 1407(a) to prohibit an MDL court from transferring the MDL cases to itself for trial under 28 U.S.C. § 1404(a), which involves transfer of venue for convenience of the parties and witnesses. *See Lexecon*, 523 U.S. at 28. In so holding, the Court made clear that § 1407(a) is "a venue statute that … categorically limits the authority of courts to override **a plaintiff's choice** [of forum]." *Id*. at 42 (emphasis added).

After *Lexecon*, based in part upon the proposition that objections to venue are generally waiveable, federal courts have held that a plaintiff may waive the right to remand his or her case under § 1407(a). *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 615-16 (7th Cir. 2009); *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1325-26 (11th Cir. 2000); *see also In re Duncan*, 713 F.2d 538, 542 (9th Cir. 1983).

In 2010, in consideration of a motion filed by plaintiff for reconsideration of dismissal for lack of personal jurisdiction over defendants, the United States District Court for the District of Nevada was faced with the issue before the Court presently—that is, whether an MDL Court has authority to transfer a plaintiff's case to the proper jurisdiction pursuant to §§1406(a) and 1631. Omnibus Exhibit "S", *In re Western States Wholesale Nat'l Gas Antitrust Litigation v. Excel Energy Inc.*, 2010 U.S. Dist. LEXIS 104116 at *28 (D. Nev. 2010). Although the court ultimately rejected the plaintiffs request to transfer under § 1406(a) and 1631 because the plaintiffs "never requested a transfer or even suggested the possibility of transfer until [the

---

[8] 28 U.S.C. 1704(a) provides in relevant part that "actions transferred to a court for consolidated or coordinated pretrial proceedings "shall be remanded by the panel at or before the conclusions of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."

motion] for reconsideration", the court held that a plaintiff may properly waive his or her right to remand under §1407(a). *Id*. at *31. In holding that a plaintiff may waive their right to remand under § 1407(a), the court opined as follows:

> One might think that a plaintiff always would prefer transfer to dismissal, and thus requiring a waiver in these circumstances is a formality which serves no legitimate purpose and harms, rather than protects, a plaintiff's interests. However, a plaintiff may make the strategic decision that an appeal of the district court's ruling is preferable to a transfer to another forum.

*Id*. at *31, fn. 3.

Accordingly, to the extent there is any question regarding this Court's authority to directly transfer Plaintiffs' cases to a court other than the Northern District of Ohio, Plaintiffs expressly waive their right to remand under § 1407(a). In the event this Court determines that transfer is appropriate, Plaintiffs submit that the best practice is that suggested by Judge Lambros in 1989. Plaintiffs should be allowed to initially suggest the jurisdiction or jurisdictions to which their cases should be transferred and then Defendants would have the opportunity to assent or, in the event of a disagreement, Defendants would be required to identify the forum or fora within which they are subject to personal jurisdiction.

Should this Court determine that it cannot transfer these cases to various other districts throughout the country, Plaintiffs submit that this Court should suggest remand of these cases to the Northern District of Ohio with a suggestion of jurisdictions to which the cases should be transferred.

## CONCLUSION AND PRAYER FOR RELIEF

There is ample precedent which calls for courts to grant special deference to merchant seaman. "From time immemorial, the seaman has been the object of special care on the part of both Courts and Legislature. 'They are regarded as the wards of the court and every shield and

safeguard which the law can give is thrown around them, both by legislative enactment and judicial decision.…'" *Evans v. Nicholson Transit Co*., 58 F. Supp. 82, 83 (D. Ohio 1944) (quoting *The James H. Shrigley*, 50 F. 287 (D.N.Y. 1892)). In fact, courts have liberally construed jurisdictional rules in the favor of merchant seaman based upon the "traditionally liberal attitude of admiralty towards seaman and their rights." *Id*. The merchant seamen who are Plaintiffs in these cases also deserve to have their claims protected.

Defendants have waived personal jurisdiction in many cases and have forfeited the defense in others. Regardless, dismissal of Plaintiffs' cases would be improper. The "interest of justice" supports the transfer of these cases, not their dismissal.

WHEREFORE, premises considered, Plaintiffs respectfully request that this Court deny Defendant's Motion for Dismissal based on lack of personal jurisdiction.

Respectfully submitted,

This 12th day of September, 2013.

ATTORNEYS FOR PLAINTIFF

/s/John E. Herrick_____
/s/John D. Hurst_____
John E. Herrick
John D. Hurst
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29264
(843)216-9000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Combined Response and Memorandum of Law In Opposition to Defendant's Motion to Dismiss (Personal Jurisdiction) was filed electronically in the respective MARDOC File on September 12, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/John E. Herrick_____
/s/John D. Hurst_____
John E. Herrick
John D. Hurst
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29264
(843)216-9000

## EXHIBIT A

| | |
|---|---|
| 2:11CV30198 | Bush, Kenneth L |
| 2:11CV30618 | Hopkins, Leroy K |
| 2:11CV31160 | Donnelly, Thomas E |